**STATE OF WEST VIRGINIA**

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **E.C. and R.C.**

**No. 20-0118** (Tucker County 19-JA-9 and 19-JA-15)

## MEMORANDUM DECISION

Petitioner Mother N.W., by counsel David C. Fuellhart, appeals the Circuit Court of Tucker County's January 15, 2020, order terminating her parental rights to E.C. and R.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent by admitting improper evidence.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed an abuse and neglect petition after E.C. was born drug-exposed. Specifically, the DHHR alleged that petitioner tested positive for methamphetamine, buprenorphine, and benzodiazepines upon E.C.'s birth. Petitioner denied methamphetamine use to the assigned worker. Further, E.C. is petitioner's seventh child, but petitioner reported to hospital staff that she did not know she was pregnant. Four of petitioner's seven children, including E.C., were born drug-exposed, and petitioner previously voluntarily relinquished her parental rights to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner assigns no error to the termination of her parental rights.

two other children.[3] The DHHR outlined petitioner's extensive history of Child Protective Services ("CPS") referrals due to her chronic substance abuse since 2012, including a previously dismissed 2017 child abuse and neglect case regarding R.C. Thereafter, petitioner waived her right to a preliminary hearing, and the circuit court ordered her to participate in random drug screenings.

The circuit court held a contested adjudicatory hearing in November of 2019, during which a CPS worker testified that, upon admission to give birth to E.C., petitioner tested positive for methamphetamine, buprenorphine, and benzodiazepines. In response, petitioner acknowledged that she tested positive for methamphetamine, buprenorphine, and benzodiazepines, but denied abusing methamphetamine and claimed that her cold medicine produced a false positive for the substance. She explained that she had "done research on it" and knew that her positive methamphetamine result was a false positive. Further, petitioner claimed that the buprenorphine was prescribed for back pain related to her pregnancy and not for her drug addiction, which she admitted had been ongoing for ten years. According to petitioner's testimony, she was in recovery at the time of the hearing. On cross-examination, the DHHR introduced a report from petitioner's doctor visit, which occurred approximately one week before E.C.'s birth. The report stated that petitioner was addicted to "oxycodone and neopterin" and had received the drugs from a now defunct clinic in Virginia. The report also mentioned that petitioner had taken the Vivitrol shot for nine months but stopped the treatment. Lastly, the report stated that petitioner had bought Subutex (buprenorphine) "off the streets" just five days prior to E.C.'s birth. Petitioner denied abusing buprenorphine during her pregnancy but also testified that she previously bought the substance "off the streets." Relevant to her argument on appeal, petitioner objected when a CPS worker testified to E.C.'s cord blood results, arguing that the results contained within the report from the hospital were hearsay and the worker could not testify as to the contents. The circuit court overruled the objection and admitted the cord blood report. Petitioner further objected to the worker's testimony, arguing that she was not a medical expert and could not interpret the levels of substances in the cord blood within the report. The circuit court overruled this objection as well. Having heard the evidence, the circuit court found that petitioner's substance abuse resulted in her abuse and neglect of E.C. and R.C. and adjudicated her as an abusing parent.

In December of 2019, the circuit court held a final dispositional hearing. The DHHR previously filed its motion to terminate petitioner's parental rights, and petitioner previously filed a motion for a post-adjudicatory improvement period. In support of its motion to terminate petitioner's parental rights, the DHHR presented the testimony of the assigned CPS worker who testified that petitioner failed to take responsibility for the abuse of her children, did not comply with drug screening, and failed to participate in multidisciplinary team ("MDT") meetings to develop her case plan. In support of her motion for an improvement period, petitioner testified that she did not know that she was required to submit to drug screens or attend MDT meetings because she was not contacted by the DHHR. She continued to deny methamphetamine use and minimized the effects of her substance abuse upon E.C. while she was pregnant, arguing that E.C. did not exhibit withdrawal symptoms. The circuit court denied petitioner's motion for an improvement

---

[3]According to the record, in addition to the two children to whom petitioner voluntarily relinquished her parental rights, the remaining children not at issue in this appeal were not included in the petition below because they were previously placed in a legal guardianship with their maternal grandmother.

period, finding that she was unlikely to fully participate in light of her failure to drug screen and participate in MDT meetings. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was necessary for the welfare of E.C. and R.C. The circuit court terminated petitioner's parental rights by order entered on January 15, 2020.[4]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. According to petitioner, the circuit court erred by admitting E.C.'s cord blood report through the testimony of the CPS worker. In petitioner's view, this evidence was hearsay and should have only been presented by the report's author and/or custodian.[5] We find, however, that

---

[4]The father was dismissed from the proceedings following his successful completion of an improvement period, the children were returned to his care, and the permanency plan for the children is to remain in his care.

[5]Within this assignment of error, petitioner alleges that she was denied a "meaningful cross-examination" of the CPS worker and a "fair hearing" because the worker lacked the medical expertise to discuss the report. However, petitioner failed to cite to a single case or the appendix record in support of this assertion. These failures are in direct contradiction of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requiring that
> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(continued . . . )

any alleged evidentiary error below was harmless in light of the overwhelming evidence in support of petitioner's adjudication.

Without addressing the propriety of the introduction of the drug test results at issue, we find that the other evidence of petitioner's abuse of the children was overwhelming and precludes petitioner from relief on appeal. We have previously held as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted).

Here, the record shows that petitioner abused substances while pregnant with E.C. The DHHR presented evidence that petitioner tested positive for methamphetamine, buprenorphine, and benzodiazepines at E.C.'s birth. Also, according to her doctor's report, petitioner had been purchasing Subutex illegally prior to obtaining her valid buprenorphine prescription. Petitioner further incredibly claimed that her cough and allergy medicine caused her to produce a false positive for methamphetamine and that she knew it was a false positive because she had "done research on it." Petitioner also admitted to being addicted to opiates for approximately ten years. Most importantly, the record indicates that E.C. is petitioner's seventh child—the fourth to be born drug-exposed. The DHHR presented evidence that petitioner stated that she did not know that she was pregnant with any of her four drug-exposed children, including E.C. Considering that E.C. is petitioner's seventh child and the instant matter is petitioner's third child abuse and neglect proceeding for substance abuse, the circuit court found petitioner's testimony completely incredible. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not,

---

Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to this assertion is inadequate and entirely fails to comply with Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address this issue on appeal.

second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Based on this evidence, the circuit court found that "the only person [petitioner was] fooling [was her]self," that she had a severe drug problem, and that the children were harmed by her substance abuse. Accordingly, it is clear that petitioner's chronic, persistent substance abuse caused her to abuse the children. Further, this was overwhelmingly established without the evidence of which petitioner complains. As such, we find that she is entitled to no relief on appeal.

For the foregoing reasons, the circuit court's January 15, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison